UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERNESTO ZOTA and MARIA ZOTA,

               Plaintiffs,

vs.

GEOVERA SPECIALTY INSURANCE
COMPANY,

               Defendant.

_____ /

CASE NO.

## NOTICE OF REMOVAL

The Defendant, GEOVERA SPECIALTY INSURANCE COMPANY ("GeoVera"), by and through its undersigned counsel, hereby files this, its Notice of Removal of the above-styled cause pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1446 from the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida in which this action is pending, to the United States District Court, Middle District of Florida, Tampa Division, and in support of the removal would show the Court the following:

1.      This is an action brought by Plaintiffs against Defendant for an alleged breach of contract.

2.      Removal is appropriate under 28 U.S.C. §1332 because complete diversity of citizenship exists between the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      The Plaintiffs' Complaint, together with additional record evidence, establishes that this Court had subject matter jurisdiction over this matter.

4.      The Plaintiffs filed this action in State Court as Case No. 20-CA-4068 with the Thirteenth Judicial Circuit Court of Hillsborough County, Florida on May 12, 2020.  Defendant was served with the Complaint on June 5, 2020.

5.      This Notice of Removal is timely filed within thirty days (30) of the Defendant's first knowledge that the case is one which is removable and within one year of the commencement of this action, pursuant to 28 U.S.C. § 1446(b).

6.      At the commencement of this action, at the time of the filing of this Notice of Removal, and at all times relevant hereto, Defendant, GeoVera is/was a California corporation with its principal place of business located in Fairfield, California.

7.      Plaintiffs, at all times material hereto, are/were citizens of Florida, and resided in and/or were domiciled in Hillsborough County, Florida. *See Exhibit "A," Complaint ¶ 7; see also Official Florida Division of Elections records, Property Appraiser records, and Mortgage attached hereto as composite Exhibit "B."*

8.      This lawsuit arises out of alleged damage to Plaintiffs' property located at 5215 Holland Ave., Temple Terrace, Florida, 33617. *See Exhibit "A," Complaint ¶ 7.*

9.      The Plaintiffs' Complaint does not allege a specific amount in controversy, and states only that this "is an action for damages that exceeds Thirty Thousand and 00/100 Dollars ($30,000.00)." *See id., at ¶ 1.*

10.     As to the amount in controversy, on or about May 22, 2020, GeoVera received a Sworn Statement in Proof of Loss and estimate from Plaintiffs' counsel ("Estimate"), estimating the purported damages to the subject property to be $66,952.98.  *See Sworn Statement in Proof of Loss and All Pro Claims Adjusters Estimate, attached hereto as composite Exhibit "C."* Plaintiffs'

302410142v1 1010903

lawsuit and claim for damages is predicated, in part, upon the damages set forth in the attached Estimate.

11.     The Plaintiffs also seek attorney's fees and court costs under statutory authority requiring that attorney fees be included in the judgment.  Since the fees are authorized by statute, a reasonable amount of those fees are included and considered in the amount in controversy. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000); *see also DO Restaurants v. Aspen Specialty Ins. Co.*, 948 F. Supp. 2d 1342, 1345 (S.D. Fla. 2013) ("When a statute authorizes the recovery of attorney's fees and the plaintiff has requested attorney's fees, a reasonable amount of those fees is included in the amount in controversy."); *Mirras v. Time Ins. Co.*, 578 F. Supp. 2d 1351, 1352-53 (M.D. Fla. 2008) (same).

12.     The amount of fees to be included in the determination of diversity jurisdiction is the attorney's fees and costs to be incurred by the Plaintiffs *through trial. DO Restaurants*, 984 F. Supp. 2d at 1346.  Accordingly, the only way this Court could possibly *not* have subject matter jurisdiction is if the total amount of attorney's fees later sought by Plaintiffs through trial is $8,048.01 or less.  Upon information and believe, Plaintiffs will seek substantially more than $8,048.01 in attorney's fees if they prevail in the instant action at trial.

13.     This Court has held, in substantially similar circumstances, that where the amount claimed for damages was somewhat less than the required $75,000.00, but the plaintiff also requested attorney's fees pursuant to statutory authority, that the defendant had met its burden to establish the court's subject matter jurisdiction. *See Maloy v. Scottsdale Ins. Co.*, Case No. 2:17-cv-470-FtM-29MRM, Doc. 8, Order (M.D. Fla. Sept. 6, 2017) (finding that defendant met its burden to establish the requisite amount in controversy when plaintiff's claim for damages was

only $60,161.49, but plaintiff also sought  statutorily authorized attorney's fees). *See copy of September 6, 2017 Order in Maloy attached hereto as Exhibit "D."*

14.    More recently, the Northern District analyzed a Motion to Remand in which the plaintiff argued that GeoVera did not meet the amount in controversy threshold because the amount in controversy includes only the repair estimate. *See Stephens v. GeoVera Specialty Ins. Co.*, Case No.: 1:19-cv-00327-AW-GRJ, Doc. 10, Order (N.D. Fla. Feb. 10, 2020). The *Stephens* court denied the plaintiff's motion for remand, finding that GeoVera had met its burden to establish the court's subject matter jurisdiction because that the cost of the repair estimate and attorney's fees alone "put the total over $63,000, before considering additional fees incurred the rest of the way." *See copy of February 10, 2020 Order in Stephens, attached hereto as Exhibit "E."* The court continued: "the amount in controversy includes reasonable attorneys fees through the end of trial. That amount—the amount a plaintiff will receive if successful—is part of what will be at issue during the case. . . . And those fees—the fees recoverable by statute—include fees through the end of the litigation." *(See Exhibit "E," pp.4-5 of 5).*

15.    The Plaintiffs' Complaint, together with the additional record evidence, establishes that this Court has subject matter jurisdiction over this matter.

16.    As noted above, the amount in controversy exceeds $75,000.00 and thus, satisfies the jurisdictional requirements for diversity removal.  This is based upon the Complaint in the underlying action, and Plaintiffs' claim for damages to the subject property, along with attorneys fees and costs.  *See Affidavit of Joseph Belton, II, attached hereto as Exhibit "F."*

17.    This Notice of Removal is timely filed within thirty days (30) of the Defendant's first knowledge that this case is one which is removable and within one year of the commencement of this action, pursuant to 28 U.S.C. § 1446(b).

4

18.     A copy of this Notice will be timely filed with the Clerk of the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

19.     The Defendant files with this Notice, true and correct copies of all pleadings filed in the above-captioned State action.

20.     Written notice of the filing of this Notice of Removal on this date has been given to the counsel for Plaintiffs, Joanna M. Alemany and Natasha A. Riverea of Marin, Eljaiek, Lopez & Martinez P.L., 2601 South Bayshore Drive, 18th Floor, Coconut Grove, Florida 33133, mellaw2@mellawyers.com, jma@mellawyers.com, and nrivera@mellawyers.com.

21.     The undersigned certifies that the Defendant, GeoVera, has consented to the removal of this action from the Thirteenth Judicial Circuit Court of Hillsborough County, Florida to the United States District Court, Middle District, Tampa Division.

22.     The undersigned counsel is authorized by GeoVera to file this Notice of Removal, is licensed in the State of Florida, and is a member in good standing of the Bar of this Court.

WHEREFORE, GEOVERA SPECIALTY INSURANCE COMPANY, respectfully requests this Court remove this Pasco County action to this Court pursuant to the provisions of 28 U.S.C. §1441.

Respectfully submitted this 25 day of June, 2020.

302410142v1 1010903

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on June 25, 2020, a true and correct copy of the foregoing was

electronically filed with the Clerk of the Court by using the CM/ECF system and was sent via

electronic mail to:

Joanna M. Alemany, Esquire
Natasha A. Rivera, Esquire
Marin, Eljaiek, Lopez & Martinez P.L.
2601 South Bayshore Drive, 18th Floor
Coconut Grove, FL 33133
Primary:  mellaw2@mellawyers.com
Secondary:  jma@mellawyers.com
Secondary:  nrivera@mellawyers.com
*Counsel for Plaintiffs*

GORDON REES SCULLY MANSUKHANI

*s/Kristina L. Marsh*
Kristina L. Marsh, Esquire
Florida Bar No.: 0311080
Christina M. Flores, Esquire
Florida Bar No. 125966
Primary: kmarsh@grsm.com
Primary: cflores@grsm.com
Secondary:tflynn@grsm.com
Secondary: kwarrington@grsm.com
601 S. Harbour Island Blvd., Suite 109
Tampa, FL 33602
Telephone (Main): 813-444-9700
Telephone (Direct): 813-523-4937
Facsimile: 813-377-3505
*Counsel for Defendant,*
*GeoVera Specialty Insurance Company*

302410142v1 1010903

IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

ERNESTO ZOTA and MARIA ZOTA,

                 Plaintiff,

v.

CASE NO.:

GEOVERA SPECIALTY INSURANCE
COMPANY,

                 Defendant,
_____/

## COMPLAINT

       Plaintiffs, ERNESTO ZOTA and MARIA ZOTA (collectively referred to hereafter as the "Insured"), hereby sue Defendant, GEOVERA SPECIALTY INSURANCE COMPANY (the "Insurance Company"), and allege as follows:

### PARTIES, JURISDICTION AND VENUE

       1.     This is an action for damages that exceeds Thirty Thousand and 00/100 Dollars ($30,000.00), exclusive of interest, costs and attorney's fees and equitable relief by way of a Declaratory Judgment action.

       2.     The Insured are individuals who at all times material hereto have resided in Hillsborough County, Florida.

       3.     The Insurance Company is a Florida corporation qualified to do business in Florida and has, at all times material hereto, been conducting business in Hillsborough County, Florida.

       4.     Venue is proper in Hillsborough County, Florida because the contract, which forms the subject matter of this lawsuit, was executed in Hillsborough County, Florida.

[4132624/1]

5.     All conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

## **GENERAL ALLEGATIONS**

6.     At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of GC90019697 (the "Policy").  A true and correct copy of policy is attached hereto as Exhibit "**A**".

7.     Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's property against certain losses.  The damaged property is located at 5215 Holland Ave, Temple Terrace, FL 33617 (the "Property").

8.     On or about May 1, 2019, while the Policy was in full force and effect, the Property sustained a covered loss as a result of sudden and accidental failure of plumbing system (the "Loss").

9.     The Insurance Company assigned claim number 1924204696 to the Loss.

10.     Subsequently, on or about December 5, 2019, the Insurance Company informed the Insured that it was denying coverage for the Loss on the basis that it was not covered by the Policy.  However, after diligent inspection of the Loss, it was obvious that the Property sustained damage, which the Insurance Company agreed to provide coverage for under the terms of the Policy.

11.     As of the date of the filing of this lawsuit, the Insurance Company has failed to: (i) acknowledge that payment would be forthcoming; and/or (ii) make any payment of insurance proceeds to the Insured. As a result of the foregoing, the Insurance Company has breached the Policy.

[4132624/1]

12.     The Insured have suffered and continue to suffer damages resulting from Insurance Company's breach of the Policy.

13.     The Insured have been obligated to retain the undersigned attorneys for the prosecution of this action and are entitled to a reasonable attorney's fee pursuant to Florida Statute Sections 627.428 and/or 626.9373.

**COUNT I**
**BREACH OF CONTRACT**

14.     The Insured reincorporate paragraphs 1 through 13 as if fully set forth herein.

15.     It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

16.     The Insured have paid all premiums due and owing as contemplated by the Policy; thus, fully performing their obligations under the Policy.

17.     The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

18.     Furthermore, at all times material hereto, the Insured have satisfied all post-loss obligations to the best of their ability in accordance with the Policy.

19.     In contrast, the Insurance Company has failed to: (i) acknowledge coverage for the Loss; and/or (ii) acknowledge that payment would be forthcoming; and/or (iii) make any payment of insurance proceeds to the Insured.  As a result of the foregoing, the Insurance Company has breached the Policy.

20.     As a direct and proximate result of the Insurance Company's breach of the Policy, the Insured have sustained damages.

[4132624/1]

WHEREFORE, the Insured respectfully request that this Court enter judgment against the Insurance Company for damages, plus interest, court costs and reasonable attorney's fees pursuant to Sections 627.428 and/or 626.9373, Florida Statutes.

## COUNT II
## DECLARATORY JUDGMENT

21.    The Insured reincorporate paragraphs 1 through 13 as if fully set forth herein.

22.    There is a bona fide, actual, present, adverse, and practical need for this Court to render a declaration as to whether the Policy issued by Insurer to Insured provides coverage to Insured for the Loss.

23.    There is doubt between the Insured and Insurer regarding coverage of the loss which affects the rights and/or privileges of the Parties.

24.    This declaration deals with a present controversy as to the application of the law to facts regarding the insurance coverage available to Insured for the Loss.

25.    By filing this declaratory judgment action, the Insured are not requesting that the Court merely provide legal advice or answer questions propounded from curiosity.

26.    Based upon the foregoing, the Insured are entitled to a declaratory judgment, holding that coverage does exist for the Loss; thus removing any doubt that exists between the Parties.

27.    Pursuant to Section 86.081, Florida Statues, the Insured are entitled to costs.


WHEREFORE, the Insured respectfully seek the entry of a declaratory judgment against the Insurer holding that the Loss is covered under the Policy, plus costs and attorney fees for bringing this action and such other relief as the Court deems just and proper.

[4132624/1]

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated this 12th day of May, 2020.

**Respectfully Submitted by,**

**Marin, Eljaiek, Lopez & Martinez P.L.**
Counsel for the Insured
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
Telephone No. (305) 444-5969
Facsimile No. (305) 444-1939
Email: Mellaw2@mellawyers.com

By:    /s/ Joanna M. Alemany
       **Joanna M. Alemany, Esq.**
       **Florida Bar No. 71375**
       **JMA@mellawyers.com**
       Natasha A. Rivera, Esq.
       Florida Bar No. 1015700
       NRivera@mellawyers.com

[4132624/1]



**Bob Henriquez**
**Hillsborough County Property Appraiser**

https://www.hcpafl.org/
15th Floor County Ctr.
601 E. Kennedy Blvd, Tampa, Florida 33602-4932
Ph: (813) 272-6100

# Folio: 201171-0000



## Owner Information

| | |
|---|---|
| Owner Name | ZOTA ERNESTO C |
| Mailing Address | PO BOX 47001<br>TAMPA, FL  33646-0109 |
| Site Address | 5215 HOLLAND AVE, TEMPLE TERRACE |
| PIN | T-15-28-19-42U-000164-00007.0 |
| Folio | 201171-0000 |
| Prior PIN | |
| Prior Folio | 000000-0000 |
| Tax District | TT - TEMPLE TERRACE |
| Property Use | 0100 SINGLE FAMILY R |
| Plat Book/Page | 17/41 |
| Neighborhood | 217002.00 | Temple Terrace Area West |
| Subdivision | 42U | TERRACE PARK UNIT NO 5 REVISED |

## Value Summary

| Taxing District | Market Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| County | $79,406 | $68,282 | $0 | $68,282 |
| Public Schools | $79,406 | $79,406 | $0 | $79,406 |
| Municipal | $79,406 | $68,282 | $0 | $68,282 |
| Other Districts | $79,406 | $68,282 | $0 | $68,282 |

Note: This section shows Market Value, Assessed Value, Exemptions, and Taxable Value for taxing districts. Because of changes in Florida Law, it is possible to have different assessed and taxable values on the same property. For example, the additional $25,000 Homestead Exemption and the non-homestead CAP do not apply to public schools, and the Low Income Senior Exemption only applies to countywide and certain municipal millages.

## Sales Information

| Book | Page | Month | Year | Type Inst | Qualified or Unqualified | Vacant or Improved | Price |
|---|---|---|---|---|---|---|---|
| 9761 | 0384 | 07 | 1999 | WD | Qualified | Improved | $62,000 |
| 7055 | 0460 | 07 | 1993 | WD | Qualified | Improved | $37,000 |
| 3216 | 1590 | 03 | 1977 | | Qualified | Improved | $8,000 |

EXHIBIT "B"

## Building Information
### Building 1

| Type | 01  \| SINGLE FAMILY |
|---|---|
| **Year Built** | 1956 |



### Building 1 Construction Details

| Element | Code | Construction Detail |
|---|---|---|
| Class | C | Masonry or Concrete Frame |
| Exterior Wall | 7 | Masonry Frm: Stucco |
| Roof Structure | 2 | Shed |
| Roof Cover | 2 | Rolled Composition |
| Interior Walls | 5 | Drywall |
| Interior Flooring | 8 | Carpet |
| Interior Flooring | 7 | Tile |
| Heat/AC | 2 | Central |
| Architectural Style | 4 | Basic 1-Story |
| Condition | 3 | Average |
| Bedrooms | 2.0 | |
| Bathrooms | 1.0 | |
| Stories | 1.0 | |
| Units | 1.0 | |

### Building 1 subarea

| Area Type | Gross Area | Heated Area | Depreciated Value |
|---|---|---|---|
| FEP | 80 | 80 | $3,223 |
| FST | 35 | | $907 |
| BAS | 504 | 504 | $25,384 |
| FOP | 32 | | $403 |
| BAS | 252 | 252 | $12,692 |
| **Totals** | **903** | **836** | **$42,609** |

## Extra Features

| OB/XF Code | Description | Building | Year On Roll | Length | Width | Units | Value |
|---|---|---|---|---|---|---|---|
| 0120 | DECK WOOD | 1 | 2000 | 0 | 0 | 92.00 | $437 |

## Land Information

| Use Code | Description | Zone | Front | Depth | Land Type | Total Land Units | Land Value |
|---|---|---|---|---|---|---|---|
| RED0 | Res SF Class 4.00 | R-75 | 90.00 | 100.00 | SE \| SF LOTS W/ EFF SIZE | 9,000.00 | $36,360 |

## Legal Description

TERRACE PARK UNIT NO 5 REVISED LOTS 7 8 AND 9 BLOCK 164

EXHIBIT "B"

Return To:
~~SUNCOAST SCHOOLS FEDERAL~~
~~CREDIT UNION~~
~~6801 E. HILLSBOROUGH AVE.~~
~~TAMPA, FL 33610~~

01-2328

MEMBERS TITLE AGENCY, LLC
P.O. BOX 11739
6809 E. HILLSBOROUGH AVE.
TAMPA, FL 33680

INSTR # 2002350548
OR BK 12012 PG 0182

RECORDED 10/14/2002 02:01 PM
RICHARD AKE CLERK OF COURT
HILLSBOROUGH COUNTY
DOC TAX PD(F.S.201.08)    203.00
DEPUTY CLERK A Karr

This document was prepared by:

SHARON HAWKES
6801 E. HILLSBOROUGH AVE.
TAMPA, FL 33610

——————————————[Space Above This Line For Recording Data]——————————————

# MORTGAGE

## HOMESTEAD PROPERTY

this document ... from payment of
intangible recording tax by provision of
the Department of Revenue (12C-2.0045)

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **October 2nd, 2002**                ,
together with all Riders to this document.
**(B) "Borrower"** is MARIA V ZOTA and ERNESTO C ZOTA, ~~HUSBAND AND~~ WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is SUNCOAST SCHOOLS FEDERAL CREDIT UNION

Lender is a **Credit Union**
organized and existing under the laws of **UNITED STATES OF AMERICA**

4039626-20

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3010  1/01

(VMP) -6(FL) (0005)

Page 1 of 16        Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT "B"

**OR BK 12012  PG 0183**

Lender's address is **6801 E. HILLSBOROUGH AVE. , TAMPA, FL 33610**

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **October 2nd, 2002** .
The Note states that Borrower owes Lender  **FIFTY EIGHT   THOUSAND  AND 00/100**

Dollars
(U.S. $ **58,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  **November 1, 2032**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider         [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider              [ ] Biweekly Payment Rider      [ ] Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) amounts under Section 3 of this Security Instrument.

**4039626-20**

Initials:_____

(VMP) -6(FL) (0005)                    Page 2 of 16                              **Form 3010  1/01**

OR BK 12012  PG 0184

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the **County**                    [Type of Recording Jurisdiction]
of **HILLSBOROUGH**                                                            [Name of Recording Jurisdiction]:
**LOTS 7, 8 AND 9, BLOCK 164, TERRACE PARK UNIT NO. 5 REVISED, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 17, PAGE 41, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA.**

Parcel ID Number: **2011710000**                            which currently has the address of
**5215 E HOLLAND ST**                                                                    [Street]
**TEMPLE TERRACE**                                      [City], Florida **33617**       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**4039626-20**

*VMP*®-6(FL) (0005)                    Page 3 of 16          Initials: _____          Form 3010  1/01

**OR BK 12012 PG 0185**

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

4039626-20

Initials: _____

 -6(FL) (0005)

Page 4 of 16

Form 3010  1/01

OR BK 12012 PG 0186

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

4039626-20

VMP®-6(FL) (0005)    Page 5 of 16    Initials: _____    Form 3010  1/01

OR BK 12012  PG 0187

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

4039626-20

 -6(FL) (0005)                    Page 6 of 16        Initials: _____        Form 3010  1/01

EXHIBIT "B"

OR BK 12012  PG 0188

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

4039626-20

 -6(FL) (0005)                    Page 7 of 16          Initials: _____          Form 3010  1/01

OR BK 12012   PG 0189

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

4039626-20

Initials: _____

-6(FL) (0005)      Page 8 of 16      Form 3010  1/01

OR BK 12012  PG 0190

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

EXHIBIT "B"

OR BK 12012 PG 0191

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

4039626-20

Initials: _____

VMP®-6(FL) (0005)                    Page 10 of 16                    Form 3010  1/01

OR BK 12012  PG 0192

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

4039626-20

VMP®-6(FL) (0005)   Page 11 of 16   Initials:_____   Form 3010  1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

4039626-20

Initials:_____

OR BK 12012    PG 0194

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

4039626-20

Initials:_____

VMP®-6(FL) (0005)    Page 13 of 16    Form 3010  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.**  As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.**  The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

OR BK 12012 PG 0196

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____    _____ (Seal)
                             **MARIA V ZOTA**              -Borrower

                             **5215 E HOLLAND ST**
                             **TEMPLE TERRACE, FL 33617** (Address)

_____    _____ (Seal)
                             **ERNESTO C ZOTA**            -Borrower

                             **5215 E HOLLAND ST**
                             **TEMPLE TERRACE, FL 33617** (Address)

_____ (Seal)    _____ (Seal)
                -Borrower                            -Borrower

              (Address)                          (Address)

_____ (Seal)    _____ (Seal)
                -Borrower                            -Borrower

              (Address)                          (Address)

_____ (Seal)    _____ (Seal)
                -Borrower                            -Borrower

              (Address)                          (Address)

EXHIBIT "B"

OR BK 12012   PG 0197

**STATE OF FLORIDA,** Hillsborough                    **County ss:**

The foregoing instrument was acknowledged before me this                    by

Maria V. Zote
and Ernesto C. Zote

who is personally known to me or who has produced    D.L.    as identification.

_____
Notary Public



Debbie H. Whittaker
MY COMMISSION # CC941828 EXPIRES
June 20, 2004
BONDED THRU TROY FAIN INSURANCE INC.

DEBBIE H. WHITTAKER

-6(FL) (0005)                    Page 16 of 16

Initials: _____

4039626-20
Form 3010   1/01

EXHIBIT "B"

OR BK 12012 PG 0198

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this **2nd** day of **October, 2002** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **SUNCOAST SCHOOLS FEDERAL CREDIT UNION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**5215 E HOLLAND ST
TEMPLE TERRACE, FL 33617**
[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **5.250** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the **1st** day of **January 2006** , and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

4039626-20

**MULTISTATE ADJUSTABLE RATE RIDER** - Single Family

VMP-899R (0009) 1/01
Page 1 of 5 Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

OR BK 12012  PG 0199

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:
**Monthly Average Yield US Treasury Constant 3 year Maturity**

The most recent Index figure available as of the date: ☒ 45 days ☐ _____
before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**ONE AND 000/1000**                                                                                percentage points
(                          **1.000**%) to the Current Index. The Note Holder will then round the result of this
addition to the ☒ Nearest     ☐ Next Highest     ☐ Next Lowest
(                                                                          **0.12500**%). Subject to
the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

☐ **Interest-Only Period**

The "Interest-only Period" is the period from the date of this Note through                          .
For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

4039626-20

Initials:_____

VMP-899R (0009)                          Page 2 of 5

OR BK 12012   PG 0200

**(D) Limits on Interest Rate Changes**
**(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)**

☐ (1) There will be no maximum limit on interest rate changes.

☒ (2) The interest rate I am required to pay at the first Change Date will not be greater than 6.750 % or less than 5.000 %.

☒ (3) My interest rate will never be increased or decreased on any single Change Date by more than ONE AND 500/1000                                    percentage points ( 1.500 %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than 10.250%, which is called the "Maximum Rate."

☒ (5) My interest rate will never be less than 5.000%, which is called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☐ (7) The interest rate I am required to pay at the first Change Date will not be greater than                  % or less than                  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than                  percentage points (                  %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials:_____                          4039626-20

VMP-899R (0009)                          Page 3 of 5
®

OR BK 12012  PG 0201

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

4039626-20

Initials:_____

VMP®-899R (0009)                    Page 4 of 5

EXHIBIT "B"

OR BK 12012   PG 0202

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
MARIA V ZOTA            -Borrower

_____ (Seal)
ERNESTO C ZOTA          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

4039626-20

VMP®-899R (0009)            Page 5 of 5

EXHIBIT "B"



# Voter Information Lookup

Please find your voter registration information below.

Full Name:
**ERNESTO C ZOTA**

Street Address:
**1002 DEBUEL RD**

City:
**LUTZ**

Zip Code:
**33549**

County Name:
**HILLSBOROUGH**

Voter Identification Number:
**106621377**

Date Of Registration:
**1/3/2004**

Party:
**No Party Affiliation**

Voter Status:
**Active\***

*An active voter refers to a registered voter who is eligible to vote.

Access Ballot and Precinct Information (https://www.electionsfl.org/VFLookup.php?
fvrsid=106621377&ckey=1234567&county=HIL) available through your county Supervisor of
Elections' website.

New Search (/en/CheckVoterStatus)

EXHIBIT "B"



# Voter Information Lookup

Please find your voter registration information below.

Full Name:
**MARIA VICTORIA ZOTA**

Street Address:
**1002 DEBUEL RD**

City:
**LUTZ**

Zip Code:
**33549**

County Name:
**HILLSBOROUGH**

Voter Identification Number:
**106643012**

Date Of Registration:
**7/26/2004**

Party:
**No Party Affiliation**

Voter Status:
**Active***

*An active voter refers to a registered voter who is eligible to vote.

Access Ballot and Precinct Information (https://www.electionsfl.org/VFLookup.php?
fvrsid=106643012&ckey=1234567&county=HIL) available through your county Supervisor of
Elections' website.

New Search (/en/CheckVoterStatus)

EXHIBIT "B"

**SWORN STATEMENT IN PROOF OF LOSS**

4130-034

Section 817.234(2)(b), Florida Statutes, provides that "Any person who knowingly and with intent to injure, defraud or deceive any insurance company files a statement of claim containing false, incomplete or misleading information is guilty of a felony of third degree."

$ 104,040.00

AMOUNT OF POLICY AT TIME OF LOSS          POLICY NUMBER   GC90019697      CLAIM NUMBER   1924204696

2/30/19          DATE EXPIRES   2/30/2000

DATE ISSUED

AGENT   Appalachian Underwriters Inc.

To the   Grovera Advantage                                   INSURANCE COMPANY
of   Fairfield, CA   94533
At the time of loss, by the above indicated policy of insurance you insured   Ernesto Zota
5215 Holland Ave, Temple Terrace, FL 33617
against loss by   Water   to the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements, transfers, and assignments attached thereto.

1. Time and Origin: A   Water
the   15   day of   May , 20 19 . The cause and origin of the said loss were   Water

2. Occupancy: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatsoever:   AS PER POLICY

3. Title and Interest: At the time of the loss the interest of your insured in the property described herein was
AS PER POLICY   . No other person or persons had any interest therein or encumbrance thereon, except
AS PER POLICY

4. Changes: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location, or exposure of the property described, except:   NO EXCEPTIONS

5. Total Insurance: The total amount of insurance upon the property described by this policy was, at the time of the loss,
$ 104,040.00   as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid.
6. The Actual Cash Value of said property at the time of the loss was                        $ 104,040.00
7. The Whole Loss and Damage was                                                              $ 106,952.98
8. Less Amount of Deductible                                                                  $ 2,500.00
9. The Amount Claimed under the above numbered policy is                                      $ 104,452.98

The said loss did not originate by any act, design, or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The insured hereby covenants that no release has been, or will be given to, or settlement, or compromise made with any third party who may be liable in damages to the insured, and the Insured in consideration of the payments made under this policy hereby subrogates the said Company to all rights and causes of action the said Insured has against any person, persons, or corporations whomsoever for damage arising out of or incident to said loss, or damage to said property and authorizes said Company to sue in the name of the insured but at the cost of the Company any such third party, pledging full cooperation in such action.

The furnishing of this blank or the preparation of proofs by a representative of the above named insurance company is not a waiver of any of its rights.

SIGNATURE X _____

SIGNATURE _____

NOTARY: State of   FLORIDA   , County of   HILLSBOROUGH   , FL

On this   14TH   day of   FEBRUARY , 20 20 , before me appeared   ERNESTO ZOTA

who is known to be the person(s) named herein and who voluntarily executed this release.

_____
Notary Signature

APRIL 24, 2022
Date Commission Expires

STEPHANIE A. WOJCICHOWSKI
Notary Public - State of Florida
Commission # GG 212879
My Comm. Expires Apr 24, 2022
Bonded through National Notary Assn.

EXHIBIT "O"

Insured:      Ernesto Zota                                        Home:    (813) 802-9159
Property:     5215 Holland Ave
              Temple Terrace, FL 33617


Claim Rep.:   Ivan Pelegrino                                    Business:  (786) 610-9226
Company:      All Pro Claims Adjusters                          E-mail:    ivan@allproadjusters.com
Business:     8421 SW 143rd Ave
              Miami, FL 33183


Estimator:    Ivan Pelegrino                                    Business:  (786) 610-9226
Company:      All Pro Claims Adjusters                          E-mail:    ivan@allproadjusters.com
Business:     8421 SW 143rd Ave
              Miami, FL 33183


**Claim Number:** 123                **Policy Number:** GC90019697                **Type of Loss:** Backup of Sewer or Drain


Date Contacted:      6/20/2019 12:00 AM
Date of Loss:        5/1/2019 12:00 AM            Date Received:   6/20/2019 12:00 AM
Date Inspected:      6/21/2019 12:00 AM           Date Entered:    6/21/2019 10:20 AM
Date Est. Completed: 6/25/2019 9:43 PM


Price List:   FLTA8X_APR19
              Restoration/Service/Remodel
Estimate:     ZONA_ERNESTO

**ZONA_ERNESTO**
**Main Level**

**Living Room**                                                                Height: 8'

**Missing Wall - Goes to Floor**        10' X 6' 8''              Opens into KITCHEN_DINI

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 1. R&R Tile floor covering | 151.42 SF @ | 9.73 = | 1,473.31 |
| 2. Remove Additional labor to remove tile from concrete slab | 151.42 SF @ | 1.62 = | 245.30 |
| 3. R&R Ceramic tile base | 39.33 LF @ | 15.25 = | 599.78 |
| 4. Seal/prime then paint the walls twice (3 coats) | 328.00 SF @ | 1.05 = | 344.40 |
| 5. Mask and prep for paint - plastic, paper, tape (per LF) | 49.33 LF @ | 1.11 = | 54.76 |
| 6. Floor protection - self-adhesive plastic film | 151.42 SF @ | 0.52 = | 78.74 |

**Kitchen Dining**                                                              Height: 8'

**Missing Wall - Goes to Floor**        6' 9'' X 6' 8''          Opens into LAUNDRY_ROOM
**Missing Wall - Goes to Floor**        10' X 6' 8''            Opens into LIVING_ROOM

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 7. R&R Tile floor covering | 133.78 SF @ | 9.73 = | 1,301.68 |
| 8. Remove Additional labor to remove tile from concrete slab | 133.78 SF @ | 1.62 = | 216.72 |
| 9. R&R Ceramic tile base | 34.92 LF @ | 15.25 = | 532.53 |
| 10. Seal/prime then paint the walls twice (3 coats) | 301.67 SF @ | 1.05 = | 316.75 |
| 11. Mask and prep for paint - plastic, paper, tape (per LF) | 51.67 LF @ | 1.11 = | 57.35 |
| 12. Floor protection - self-adhesive plastic film | 133.78 SF @ | 0.52 = | 69.57 |
| 13. R&R Cabinetry - lower (base) units | 10.00 LF @ | 196.62 = | 1,966.20 |
| 14. R&R Cabinetry - upper (wall) units | 15.00 LF @ | 141.90 = | 2,128.50 |
| 15. R&R Cabinet knob or pull | 20.00 EA @ | 8.79 = | 175.80 |
| 16. Range - electric - Remove & reset | 1.00 EA @ | 32.16 = | 32.16 |
| 17. Microwave oven - over range type - Detach & reset | 1.00 EA @ | 99.05 = | 99.05 |
| 18. Refrigerator - Remove & reset | 1.00 EA @ | 32.16 = | 32.16 |
| 19. Sink - double - Detach & reset | 1.00 EA @ | 130.79 = | 130.79 |
| 20. Sink faucet - Detach & reset | 1.00 EA @ | 98.51 = | 98.51 |
| 21. P-trap assembly - Detach & reset | 1.00 EA @ | 48.92 = | 48.92 |
| 22. R&R Angle stop valve | 2.00 EA @ | 34.05 = | 68.10 |
| 23. Garbage disposer - Detach & reset | 1.00 EA @ | 131.61 = | 131.61 |
| 24. Built-in freezer/refrigerator - Remove & reset | 1.00 EA @ | 484.00 = | 484.00 |

**Laundry Room**                                                               Height: 8'

**Missing Wall - Goes to Floor**        6' 9'' X 6' 8''          Opens into KITCHEN_DINI

ZONA_ERNESTO                                          2/11/2020          Page: 2

EXHIBIT "C"

**Missing Wall**                          **2' 9 1/2" X 8'**                          **Opens into AC**

| DESCRIPTION | QTY | | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 25.  Seal/prime then paint the walls twice (3 coats) | 242.02 | SF @ | 1.05 = | 254.12 |
| 26.  Mask and prep for paint - plastic, paper, tape (per LF) | 35.88 | LF @ | 1.11 = | 39.83 |
| 27.  Floor protection - self-adhesive plastic film | 67.21 | SF @ | 0.52 = | 34.95 |
| 28.  R&R Tile floor covering | 67.21 | SF @ | 9.73 = | 653.96 |
| 29.  Remove Additional labor to remove tile from concrete slab | 67.21 | SF @ | 1.62 = | 108.88 |
| 30.  R&R Ceramic tile base | 29.13 | LF @ | 15.25 = | 444.23 |
| 31.  Washing machine - Remove & reset | 1.00 | EA @ | 26.80 = | 26.80 |

**AC**                                                                                                      **Height: 8'**

**Missing Wall**                          **2' 9 1/2" X 8'**                          **Opens into LAUNDRY_ROOM**

| DESCRIPTION | QTY | | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 32.  Seal/prime then paint the walls twice (3 coats) | 66.31 | SF @ | 1.05 = | 69.63 |
| 33.  Mask and prep for paint - plastic, paper, tape (per LF) | 8.29 | LF @ | 1.11 = | 9.20 |
| 34.  Floor protection - self-adhesive plastic film | 7.21 | SF @ | 0.52 = | 3.75 |
| 35.  Air handler - with A-coil - Detach & reset | 1.00 | EA @ | 858.48 = | 858.48 |

**Bedroom 1**                                                                                            **Height: 8'**

| DESCRIPTION | QTY | | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 36.  Seal/prime then paint the walls twice (3 coats) | 458.67 | SF @ | 1.05 = | 481.60 |
| 37.  Mask and prep for paint - plastic, paper, tape (per LF) | 57.33 | LF @ | 1.11 = | 63.64 |
| 38.  Floor protection - self-adhesive plastic film | 186.77 | SF @ | 0.52 = | 97.12 |
| 39.  R&R Tile floor covering | 186.77 | SF @ | 9.73 = | 1,817.28 |
| 40.  Remove Additional labor to remove tile from concrete slab | 186.77 | SF @ | 1.62 = | 302.57 |
| 41.  R&R Baseboard - 3 1/4" | 57.33 | LF @ | 3.18 = | 182.31 |
| 42.  Paint baseboard - two coats | 57.33 | LF @ | 1.15 = | 65.93 |

**Bedroom 1 Closet**                                                                                     **Height: 8'**

| DESCRIPTION | QTY | | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 43.  R&R Tile floor covering | 29.79 | SF @ | 9.73 = | 289.85 |
| 44.  Remove Additional labor to remove tile from concrete slab | 29.79 | SF @ | 1.62 = | 48.26 |
| 45.  R&R Ceramic tile base | 23.92 | LF @ | 15.25 = | 364.78 |
| 46.  Seal/prime then paint the walls twice (3 coats) | 191.37 | SF @ | 1.05 = | 200.94 |

EXHIBIT "C"

**CONTINUED - Bedroom 1 Closet**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 47.  Mask and prep for paint - plastic, paper, tape (per LF) | 23.92  LF @ | 1.11 = | 26.55 |
| 48.  Floor protection - self-adhesive plastic film | 29.79  SF @ | 0.52 = | 15.49 |
| 49.  Shelving - wire (vinyl coated) - Detach & reset | 23.92  LF @ | 7.89 = | 188.73 |

**Bathroom 1**                                                                                                                    **Height: 8'**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 50.  R&R Tile floor covering | 20.63  SF @ | 9.73 = | 200.73 |
| 51.  Remove Additional labor to remove tile from concrete slab | 20.63  SF @ | 1.62 = | 33.42 |
| 52.  Seal/prime then paint the walls twice (3 coats) | 145.33  SF @ | 1.05 = | 152.60 |
| 53.  Mask and prep for paint - plastic, paper, tape (per LF) | 18.17  LF @ | 1.11 = | 20.17 |
| 54.  Floor protection - self-adhesive plastic film | 20.63  SF @ | 0.52 = | 10.73 |
| 55.  R&R Ceramic tile base | 18.17  LF @ | 15.25 = | 277.09 |
| 56.  R&R Vanity | 2.00  LF @ | 174.70 = | 349.40 |
| 57.  Sink faucet - Detach & reset | 1.00  EA @ | 98.51 = | 98.51 |
| 58.  Toilet - Detach & reset | 1.00  EA @ | 200.23 = | 200.23 |
| 59.  Medicine cabinet - Detach & reset | 1.00  EA @ | 41.64 = | 41.64 |
| 60.  Light fixture - Detach & reset | 1.00  EA @ | 42.37 = | 42.37 |
| 61.  Exhaust fan - Detach & reset | 1.00  EA @ | 152.98 = | 152.98 |

**Bedroom 2**                                                                                                                    **Height: 8'**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 62.  Seal/prime then paint the walls twice (3 coats) | 336.00  SF @ | 1.05 = | 352.80 |
| 63.  Mask and prep for paint - plastic, paper, tape (per LF) | 42.00  LF @ | 1.11 = | 46.62 |
| 64.  Floor protection - self-adhesive plastic film | 109.25  SF @ | 0.52 = | 56.81 |
| 65.  R&R Tile floor covering | 109.25  SF @ | 9.73 = | 1,063.00 |
| 66.  Remove Additional labor to remove tile from concrete slab | 109.25  SF @ | 1.62 = | 176.99 |
| 67.  R&R Baseboard - 3 1/4" | 42.00  LF @ | 3.18 = | 133.56 |
| 68.  Paint baseboard - two coats | 42.00  LF @ | 1.15 = | 48.30 |
| 69.  Heat/AC register - Mechanically attached - Detach & reset | 1.00  EA @ | 12.40 = | 12.40 |

EXHIBIT "C"

**Bathroom 2**                                                                                                    **Height: 8'**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 70. R&R Tile floor covering | 43.75 | SF @ | 9.73 | = | 425.69 |
| 71. Remove Additional labor to remove tile from concrete slab | 43.75 | SF @ | 1.62 | = | 70.88 |
| 72. R&R Ceramic/porcelain tile | 220.00 | SF @ | 10.24 | = | 2,252.80 |
| 73. Shower pan - Large | 1.00 | EA @ | 191.03 | = | 191.03 |
| 74. R&R Tile shower - 101 to 120 SF | 1.00 | EA @ | 1,634.84 | = | 1,634.84 |
| 75. R&R Vanity | 2.00 | LF @ | 174.70 | = | 349.40 |
| 76. Sink faucet - Detach & reset | 1.00 | EA @ | 98.51 | = | 98.51 |
| 77. Tub/shower faucet - Detach & reset | 1.00 | EA @ | 170.75 | = | 170.75 |
| 78. Toilet - Detach & reset | 1.00 | EA @ | 200.23 | = | 200.23 |
| 79. P-trap assembly - Detach & reset | 1.00 | EA @ | 48.92 | = | 48.92 |
| 80. R&R Angle stop valve | 3.00 | EA @ | 34.05 | = | 102.15 |
| 81. Towel bar - Detach & reset | 1.00 | EA @ | 12.74 | = | 12.74 |
| 82. Heat/AC register - Mechanically attached - Detach & reset | 1.00 | EA @ | 12.40 | = | 12.40 |

**Bedroom 2 Closet**                                                                                              **Height: 8'**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| No Attention Required | | | |

**Generals**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 83. Taxes, insurance, permits & fees (Bid Item) | 1.00 | EA @ | | | 1500 |
| 84. Cleaning Technician - per hour | 20.00 | HR @ | 32.46 | = | 649.20 |
| 85. Residential Supervision / Project Management - per hour | 20.00 | HR @ | 54.26 | = | 1,085.20 |
| 86. Job-site cargo/storage container - 20' long - per month | 1.00 | MO @ | 87.83 | = | 87.83 |
| 87. Job-site cargo container - pick up/del. (each way) 16'-40' | 2.00 | EA @ | 112.00 | = | 224.00 |
| 88. Content Manipulation charge - per hour | 20.00 | HR @ | 32.59 | = | 651.80 |
| 89. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 | EA @ | 485.00 | = | 485.00 |
| 90. Allowance for trenching to gain access and replace damaged cast iron pipes | 1.00 | EA @ | 30,475.00 | = | 30,475.00 |

**Labor Minimums Applied**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 91. Finish hardware labor minimum | 1.00 | EA @ | 105.52 | = | 105.52 |

EXHIBIT "C"

**Grand Total Areas:**

| | | | | | |
|---|---|---|---|---|---|
| 2,388.04 | SF Walls | 758.14 | SF Ceiling | 3,146.18 | SF Walls and Ceiling |
| 758.14 | SF Floor | 84.24 | SY Flooring | 292.92 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 326.42 | LF Ceil. Perimeter |
| | | | | | |
| 758.14 | Floor Area | 833.93 | Total Area | 2,388.04 | Interior Wall Area |
| 1,107.00 | Exterior Wall Area | 123.00 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

EXHIBIT "C"

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 60,139.81 |
| Material Sales Tax | 711.60 |
| Storage Rental Tax | 21.83 |
| Subtotal | 60,873.24 |
| Overhead | 3,039.87 |
| Profit | 3,039.87 |
| **Replacement Cost Value** | **$66,952.98** |
| Less Deductible | (2,500.00) |
| **Net Claim** | **$64,452.98** |

Ivan Pelegrino

EXHIBIT "C"

## Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Laundering Tax (2%) | Manuf. Home Tax (6%) | Storage Rental Tax (7%) |
|---|---|---|---|---|---|---|
| **Line Items** | | | | | | |
| | 3,039.87 | 3,039.87 | 711.60 | 0.00 | 0.00 | 21.83 |
| **Total** | | | | | | |
| | **3,039.87** | **3,039.87** | **711.60** | **0.00** | **0.00** | **21.83** |

EXHIBIT "C"

## Recap by Room

**Estimate: ZONA_ERNESTO**

**Area: Main Level**

| | | |
|---|--:|--:|
| **Living Room** | **2,796.29** | **4.65%** |
| **Kitchen Dining** | **7,890.40** | **13.12%** |
| **Laundry Room** | **1,562.77** | **2.60%** |
| **AC** | **941.06** | **1.56%** |
| **Bedroom 1** | **3,010.45** | **5.01%** |
| **Bedroom 1 Closet** | **1,134.60** | **1.89%** |
| **Bathroom 1** | **1,579.87** | **2.63%** |
| **Bedroom 2** | **1,890.48** | **3.14%** |
| **Bathroom 2** | **5,570.34** | **9.26%** |
| **Generals** | **33,658.03** | **55.97%** |
| | | |
| **Area Subtotal:  Main Level** | **60,034.29** | **99.82%** |
| **Labor Minimums Applied** | **105.52** | **0.18%** |
| | | |
| **Subtotal of Areas** | **60,139.81** | **100.00%** |
| | | |
| **Total** | **60,139.81** | **100.00%** |

EXHIBIT "C"

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| APPLIANCES | 805.78 | 1.20% |
| CABINETRY | 4,787.59 | 7.15% |
| CONTENT MANIPULATION | 963.63 | 1.44% |
| GENERAL DEMOLITION | 4,531.63 | 6.77% |
| ELECTRICAL | 152.98 | 0.23% |
| FLOOR COVERING - CERAMIC TILE | 5,502.67 | 8.22% |
| FINISH CARPENTRY / TRIMWORK | 462.88 | 0.69% |
| FINISH HARDWARE | 118.26 | 0.18% |
| HEAT,  VENT & AIR CONDITIONING | 883.28 | 1.32% |
| LABOR ONLY | 1,734.40 | 2.59% |
| LIGHT FIXTURES | 42.37 | 0.06% |
| PLUMBING | 1,433.50 | 2.14% |
| PAINTING | 2,972.35 | 4.44% |
| TILE | 5,273.49 | 7.88% |
| **O&P Items Subtotal** | **29,664.81** | **44.31%** |

| Non-O&P Items | Total | % |
|---|---:|---:|
| GENERAL DEMOLITION | 30,475.00 | 45.52% |
| **Non-O&P Items Subtotal** | **30,475.00** | **45.52%** |
| **O&P Items Subtotal** | **29,664.81** | **44.31%** |
| Material Sales Tax | 711.60 | 1.06% |
| Storage Rental Tax | 21.83 | 0.03% |
| Overhead | 3,039.87 | 4.54% |
| Profit | 3,039.87 | 4.54% |
| **Total** | **66,952.98** | **100.00%** |

ZONA_ERNESTO

EXHIBIT "C"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PENNEY MALOY,

      Plaintiff,

v.                      Case No: 2:17-cv-470-FtM-29MRM

SCOTTSDALE         INSURANCE
COMPANY,

      Defendant.

_____

**<u>ORDER</u>**

    This matter comes before the Court on review of the file. On August 18, 2017, defendant filed a Notice of Removal (Doc. #1) alleging the presence of diversity jurisdiction. The parties are diverse as to their citizenship, however the requisite amount in controversy cannot be met unless attorney's fees and costs are considered. The claim for damages is only $60,161.49,[1] but plaintiff also seeks costs, and reasonable attorney fees under statutory authority requiring that attorney fees be included in the judgment. <u>See</u> Fla. Stat. §§ 626.9373(2); 627.428(3). Since the fees are authorized by statute, the fees are included and considered in the amount in controversy, <u>Morrison v. Allstate Indem. Co.</u>, 228 F.3d 1255, 1265 (11th Cir. 2000), and the Court

---

    [1] The Complaint (Doc. #2) alleges the state minimum of $15,000.00.

finds that defendant has met its burden to establish the Court's subject matter jurisdiction.

On August 10, 2017, before removal, defendant filed a Motion to Compel Appraisal and Abate All Proceedings Pending Completion of Appraisal, or, in the Alternative, to Dismiss or Require a More Definite Statement (Doc. #3) seeking to compel plaintiff's participation in the appraisal process, or to dismiss the complaint in the alternative. Having invoked the appraisal process, defendant also sought to stay all proceedings. The motion was not resolved before the case was removed on August 18, 2017, and the time to respond has expired.

On August 30, 2017, the parties filed a Joint Motion to Abate All Proceedings Pending Completion of Appraisal (Doc. #7) indicating that they reached an agreement to proceed with the appraisal process, and agreed that the case should be stayed pending completion of the appraisal process.

Accordingly, it is hereby

**ORDERED:**

1. The Parties' Joint Motion to Abate All Proceedings Pending Completion of Appraisal (Doc. #7) is **GRANTED.**

2. Motion to Compel Appraisal and Abate All Proceedings Pending Completion of Appraisal, or, in the Alternative, to Dismiss or Require a More Definite Statement (Doc. #3) is **DENIED** as moot.

EXHIBIT "D"

3. The case is **stayed in its entirety** pending further order
   and notice by the parties that the stay is due to be lifted,
   or the case dismissed.  This includes the deadlines for
   responding to the complaint, and discovery.

4. If the Court is not notified that the appraisal process is
   complete within **one year** of this Order, the case will
   automatically be reopened and the deadlines reset.

**DONE and ORDERED** at Fort Myers, Florida, this __6th__ day of
September, 2017.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of Record

EXHIBIT "D"

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**LEE A. STEPHENS,**

     **Plaintiff,**

**v.**                                 **Case No. 1:19-cv-327-AW-GRJ**

**GEOVERA SPECIALTY INSURANCE
COMPANY,**

     **Defendant.**

_____/

## <u>ORDER DENYING MOTION TO REMAND</u>

Defendant GeoVera Specialty Insurance Company removed this case from state circuit court, and Plaintiff Lee A. Stephens now moves to remand. ECF No. 6. The motion is DENIED.

This is a first-party insurance case. According to Stephens's complaint, his home sustained a covered loss from water damage, and GeoVera refused to pay. *See generally* ECF No. 1-1 ("Am. Compl."). Stephens alleged damages "in excess of Fifteen Thousand Dollars," Am. Compl. ¶ 1, the circuit-court jurisdictional minimum at the time, *see* Fla. Stat. § 34.01(1)(c)1. He demanded judgment for "all losses with interest on any overdue payments, any incidental and foreseeable consequential damages caused by Defendant's breach of contract, plus attorney's fees and costs, pursuant to sections 626.9373, 57.041, and 92.231, Florida Statutes." Am. Compl. at 2.

1

Months later, on December 18, 2019, GeoVera removed the case, alleging diversity jurisdiction. ECF No. 1 ¶ 2. In its notice of removal, GeoVera said the case first became removable on December 13, 2019, when Stephens made a settlement demand for more than $75,000. ECF No. 1 ¶ 9 The demand—for "$117,768.08, inclusive of attorneys' fees and costs"—was to cover several categories of damages under the policy, plus "interest to date." ECF No. 1 ¶ 9. It also included a "release of bad faith." ECF No. 1 at 2, 5, 7. According to an affidavit attached to the notice of removal, the settlement demand was "GeoVera's first notice that [Stephens] is seeking in excess of $75,000." ECF No. 1 at 6-7.

This Court has jurisdiction if the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The notice of removal adequately alleges diversity of citizenship, and Stephens does not contend otherwise. Nor does Stephens contest the timing of the removal. *See* 28 U.S.C. § 1446(b). The sole issue is whether the amount in controversy is satisfied.

The "amount in controversy" is essentially "an estimate of how much will be put at issue during the litigation," *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014), and it is determined at the time of removal, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). "Where a plaintiff fails to specify the total amount of damages demanded, . . . a defendant seeking

EXHIBIT "E"

removal . . . must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). So the question is whether GeoVera has proven that.

GeoVera relies principally on Stephens's $117,768 settlement offer. In GeoVera's view, Stephens cannot make such an offer and then contend the amount in controversy is something less. ECF No. 8 at 5 ("He cannot have it both ways."). It is true that courts can consider settlement demands in evaluating the amount in controversy. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) ("While this settlement offer, by itself, may not be determinative, it counts for something."). But as Stephens points out, the settlement demand here covered claims not recoverable in this case, namely bad-faith damages. ECF No. 6 at 7-8. The amount that matters is what "will be put at issue *during the litigation*," *S. Fla. Wellness*, 745 F.3d at 1315 (emphasis added), not the total of *all* disputes the parties might have. Stephens does not seek bad faith damages in this case. *Cf. Burks v. Tex. Co.*, 211 F.2d 443, 445 (5th Cir. 1954) ("[O]nly the value of the right directly in issue in the particular suit, not the collateral effect of the judgment, may be considered in making up the necessary jurisdictional amount.").

Even without the settlement offer, though, the Court concludes that GeoVera has met its burden. The record includes a repair estimate of $51,160.85, which

EXHIBIT "E"

Stephens asserts demonstrates the actual cost of repairs. And by Stephens's own telling, he will be entitled to attorney's fees that approximated $12,000 at the time of removal.[1] That alone puts the total over $63,000, before considering additional fees to be incurred the rest of the way. Because Stephens seeks fees under § 626.9373, Florida Statutes, the attorney's fees are properly included in the amount in controversy. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000). There is a split of authority about whether that number includes only fees incurred before removal or fees anticipated through trial,[2] but this Court concludes that the amount in controversy includes reasonable fees through the end of trial. That amount—the amount a plaintiff will receive if successful—is part of what will be at issue during the case. "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Morrison*, 228 F.3d at 1265. And "those fees"—the fees recoverable by statute—include fees through the end of the litigation. *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (agreeing "with the district court that a reasonable attorneys' fee alone, when added to the $41,028.51, would push the amount of plaintiff's claim

---

[1] Stephens's trial counsel spent 23.94 hours on the case as of the date of removal, according to her affidavit, ECF No. 6-7 ¶ 4, and Stephens assumed a $500 hourly rate in his motion, ECF No. 6 at 8-9.

[2] *See* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3725 (Rev. 4th ed. 2015); *see also Iglesia La Nueva Jerusalem, Inc. v. Ohio Sec. Ins. Co.*, No. 6:18-CV-1813, 2019 WL 479673, at *2 (M.D. Fla. Feb. 7, 2019) (collecting cases detailing split of authority in Florida's federal district courts).

EXHIBIT "E"

in Count III above $50,000"); *Schmidt v. Pantry, Inc.*, No. 1:11-CV-228-SPM-GRJ, 2012 WL 1313490, at *4 (N.D. Fla. Mar. 6, 2012), *report and recommendation adopted*, No. 1:11CV228-SPM/GRJ, 2012 WL 1313480 (N.D. Fla. Apr. 17, 2012); *Lambert v. Zurich Am. Ins. Co.*, No. 1:15CV71-MW/GRJ, 2015 WL 13388242, at *2 n.3 (N.D. Fla. July 29, 2015).

According to the record, Stephens's counsel has already—before pretrial conference and an anticipated four-day trial, *see* ECF No. 6-5—spent 23.94 hours on the case. ECF No. 6-7 ¶ 4. "[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. 608 Michelin N. America, Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). Relying on judicial experience and common sense, the Court concludes that counsel cannot prepare for and conduct a four-day trial without putting in well more than twenty-four hours. And at $500 per hour, all it would take is another twenty-four hours to put the total over $75,000.

GeoVera has sufficiently demonstrated that the repair amount combined with the amount of reasonable attorney's fees exceeds the jurisdictional threshold. Therefore, Stephens's motion to remand (ECF No. 6) is DENIED.

SO ORDERED on February 10, 2020.

s/ *Allen Winsor*
United States District Judge

5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERNESTO ZOTA and MARIA ZOTA,

                Plaintiffs,                           CASE NO.

vs.

GEOVERA SPECIALTY INSURANCE
COMPANY,

                Defendant.            /

## AFFIDAVIT OF JOSEPH BELTON, II

STATE OF FLORIDA

COUNTY OF LEON

       BEFORE ME, the undersigned authority, personally appeared JOSEPH BELTON II, who, being duly sworn, deposes and says:

       1.      My name is JOSEPH BELTON II. I am at least 18 years of age and have personal knowledge regarding all that is contained herein and swear that all is true and accurate to the best of my knowledge.

       2.      I am employed as a Claims Manager for GeoVera Advantage Insurance Services.

       3.      GeoVera Specialty Insurance Company manages all claims using the services of its in-house claim department, GeoVera Advantage Insurance Services, Inc.

       4.      GeoVera Specialty Insurance Company is a foreign corporation duly licensed to transact insurance business in the State of Florida, pursuant to the Surplus Lines Law contained in Chapter 626, Florida Statutes, with its principal place of business located in Fairfield, California.

       5.      GeoVera Specialty Insurance Company ("GeoVera") issued a policy of insurance ("Policy"), Policy No. GC90019697, to Ernesto Zota and Maria Zota ("Insureds") which provided

insurance coverage for property located at 5215 Holland Avenue, Temple Terrace, FL 33617 ("subject property").

6.      The effective dates of the Policy were February 20, 2019 through February 20, 2020.

7.      The applicable Policy referenced in ¶ 6 of Plaintiffs' Complaint provides for the following coverage limits:

| Coverage A | Dwelling | $102,000.00 |
| Coverage B | Other Structures | $ 2,040.00 |
| Coverage C | Personal Property | $ 5,100.00 |
| Coverage D | Loss of Use | $ 10,200.00 |
| Coverage E | Personal Liability | $ 50,000.00 |
| Coverage F | Medical Payments to Others | $ 2,000.00 |

8.      Plaintiffs, are citizens of Florida. *See Exhibit "A" and composite Exhibit "B" to GeoVera's Notice of Removal.*

9.      On or about May 1, 2019, the subject property was alleged to have been damaged by a sudden and accidental failure of plumbing system. *See Plaintiffs' Complaint, ¶ 8.*

10.     On or about May 12, 2020, Plaintiffs filed their Complaint.

11.     On or about June 5, 2020, Plaintiffs' Complaint was served on GeoVera.

12.     Plaintiffs' Complaint does not specify the amount in dispute.

13.     On or around February 18, 2020, GeoVera received from a Sworn Statement in Proof of Loss and accompanying estimate from Plaintiffs' counsel, claiming Plaintiffs' alleged damages to be $66,952.98. *See Exhibit "C" to GeoVera's Notice of Removal.*

14.     Plaintiffs' lawsuit and claim for damages is based on the damages set forth in the Sworn Statement in Proof of Loss and accompanying estimate. In addition to the amount set forth in the Plaintiffs' Sworn Statement of Proof, Plaintiffs also seek "reasonable attorney's fees pursuant to Sections 627.428 and/or 626.9373, Florida Statutes." *See Plaintiffs' Complaint.*

EXHIBIT "F"

15.     For the reasons set forth herein, the amount in controversy, exclusive of interest and costs, is in excess of Seventy-Five Thousand Dollars and 00/100 cents ($75,000.00).

16.     GeoVera does not, by making this Affidavit or otherwise, waive, nor does it intend to waive, any of the terms, conditions, provisions, limitations or exclusions of the applicable policy of insurance; further, by making this Affidavit, GeoVera is not waiving, nor does it intend to waive any of its rights or defenses under applicable law.

*SPACE INTENTIONALLY LEFT BLANK*

Page 3 of 4

FURTHER AFFIANT SAYETH NOT.

_____
JOSEPH BELTON II

The foregoing instrument was acknowledged before me this 24th day of June, 2020,

by SHEILA BESTON who is personally known to me and who did take an oath.

RESHANDA LEWIS DONALDSON
Notary Public - State of Florida
Commission # GG 960558
My Comm. Expires Feb 20, 2024
Bonded through National Notary Assn.

_____
Notary Public

Print Name: Reshanda Donaldson

My Commission Expires: 2-20-2024

Page 4 of 4

EXHIBIT "F"